IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

MARIA AGUIRRE                                                               PLAINTIFF

V.                                                        CIVIL ACTION NO. 1:15-CV-171-SA-DAS

VITAL MARKETING, INC., and
TERRY W. JACKSON                                                          DEFENDANTS

MEMORANDUM OPINION

  Maria Aguirre filed her Complaint [1] against her former employer on September 23, 2015. Aguirre alleges that Terry Jackson, the owner of Vital Marketing, Inc., wrongly fired her after she rejected his sexual advances. Now before the Court is the Defendants' Motion [37] for Partial Summary Judgment in their favor on two specific issues. Aguirre responded [41] and the Defendants replied [43] making this motion ripe for review.

*Factual and Procedural Background*

  The following facts are taken from the Plaintiff's version of events, and for purposes of the instant motion are largely undisputed by the Defendants. Factual controversies are resolved in favor of the Plaintiff when both parties have submitted evidence of contradictory facts. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

  Early in the week of September 22, 2014, Aguirre requested to have the coming Thursday afternoon off. Aguirre wanted the time off so that she could take her daughter, a member of the high school band, to perform in a parade and pep rally. After verifying that there was no one else available to transport the daughter, Aguirre's supervisor told her that she could have Thursday afternoon off.

  When Aguirre arrived at work on Thursday morning there was a note from her supervisor instructing her that they were shorthanded that day and that Aguirre could take her daughter to

the parade, but that she needed to return to work after doing so to complete the orders due that day. The note also stated, incorrectly, that the parade would be over at 4:15 and that the school was providing transportation for the band.[1] Vital Marketing's chief operating officer, Aguirre's supervisors, and other members of her department were absent that day.

Aguirre was upset by the note, and did not think that she would have enough time to take her daughter to and from the parade and then return to work. Because there were no supervisors in her department that day, Aguirre took her concern directly to Kathy Jackson who is a part owner of the company, the chief financial officer, and the wife of Vital Marketing co-owner Defendant Terry Jackson. Kathy Jackson told Aguirre that she did not think it would be a problem, that she would talk to Terry Jackson about the issue and that they would get back with her. Aguirre returned to her work area.

Kathy Jackson explained the issue to Terry Jackson, and he went to Aguirre's work area to talk to her. Terry Jackson and Aguirre went into the adjacent warehouse to talk. Once they were alone in the warehouse, Jackson began to yell and scream at Aguirre "like a dog." Jackson told the Plaintiff that he could not "close the place down" just because she needed to leave, and continued to scream at her. Jackson then "got close" to Aguirre and said, "Well, you want to go out? Will you go out with me? If you go out with me I'll go ahead and let you do it." Aguirre told Jackson "I'm not going to do that." Jackson then told Aguirre that he was going to go look at his emails and that he would be right back. Aguirre again returned to her work area.

A short time later Terry Jackson returned to Aguirre's work area and asked her "So what?" Aguirre responded "No" and Jackson replied, "Okay, you're fired. Okay, if you leave, you're fired." As Jackson opened the door to leave Aguirre said, "That's bullshit." Jackson told Aguirre that she was fired for insubordination. Aguirre again said, "That's bullshit," and Jackson

---

[1] Aguirre's supervisor got this information from another employee whose daughter went to a different school.

escorted her from the premises. While walking Aguirre to her vehicle, Jackson told her not to bother applying for unemployment because he would fight it.

Aguirre did apply for unemployment and after a hearing, an administrative law judge found that Aguirre was discharged for misconduct. The administrative law judge also found that Aguirre's "refusal to accept the reasonable option offered to her by the employer and the sustained use of vulgarity toward the employer qualifies as misconduct."[2]

In her complaint, Aguirre alleges claims under Title VII for sexual harassment and discrimination, and a claim under Mississippi law for malicious interference with employment. In the instant motion, the Defendants argue that the Plaintiff is collaterally estopped from asserting an interference claim by the previous findings of an administrative law judge in an unemployment hearing. The Defendants request dismissal with prejudice of the Plaintiff's interference claim. The Defendants also request that the Court limit any potential recovery by the Plaintiff for back pay relative to all her claims, arguing that she failed to mitigate her damages.

*Standard of Review*

Federal Rule of Civil Procedure 56 governs summary judgment. Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

---

[2] The decision of the administrative law judge is a part of the record in this case; a transcript or recording of the hearing is not.

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the non-movant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

*Collateral Estoppel*

The Defendants argue that the Plaintiff is estopped from asserting a claim for malicious interference with employment because an administrative law judge already determined, after an unemployment hearing, that Vital Marketing terminated the Plaintiff for misconduct. The Plaintiff responds by arguing that the findings of the administrative law judge should not be given a preclusive effect by this Court under the particular circumstances of this case. In the alternative, the Plaintiff argues that even if those findings are entitled to a preclusive effect, the administrative law Judge's finding that the Plaintiff committed dischargeable misconduct is not inapposite to a finding that Jackson maliciously interfered with the Plaintiff's employment.

Mississippi courts afford preclusive weight to administrative decisions given in a judicial capacity so long as the evidence supports the conclusions and there is an absence of fraud.[3] *Cox*,

---

[3] The claim at issue here is a claim based in Mississippi law. The analysis of the preclusive weight of the administrative law judge's findings may be different in the context of a federal claim. *See Cox v. Desoto Cty., Miss.*, 564 F.3d 745, 748 (5th Cir. 2009), *cert. denied* 558 U.S. 824, 130 S. Ct. 139, 175 L. Ed. 2d 35 (2009), (citing *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 110–14, 111 S. Ct. 2166, 115 L. Ed. 2d 96 (1991),

4

564 F.3d at 748; MISS. CODE ANN. § 71–5–531. In this Circuit, a Mississippi administrative agency's factual findings are entitled to the same preclusive effect in federal court that they would receive in Mississippi courts. *Id.* (citing *Univ. of Tenn. v. Elliott,* 478 U.S. 788, 799, 106 S. Ct. 3220, 92 L. Ed. 2d 635 (1986).

The Plaintiff makes several policy arguments, citing mostly to extra-circuit authority that predates the Fifth Circuit's decision in *Cox*, about why the Court should not recognize the validity and weight of the administrative decisions at issue in this case. *See, i.e., Dionne v. Mayor and City Council of Baltimore*, 40 F.3d 677, 682 (4th Cir. 1994); *Gjellum v. City of Birmingham, Ala.*, 829 F.2d 1056, 1065 (11th Cir. 1987). Specifically, the Plaintiff argues that when an administrative decision is not supported by the weight of the evidence, or was not subject to judicial review, the preclusive effect of the findings is undermined. The Plaintiff's arguments do not distinguish binding precedent, and the Plaintiff fails to highlight any evidence that she was unable to present to the administrative law judge or any evidence of fraud. *See Cox*, 564 F.3d at 748. The Plaintiff also concedes that she failed to appeal the administrative law judge's decision. *See id*. For these reasons, the Court finds that the administrative findings at issue in this case have the same weight in this Court that they would in a Mississippi court.

The question remains, are these particular legal and factual administrative findings inapposite to a potential finding for liability for malicious interference with employment. Stated differently, are the administrative findings that the Plaintiff was fired for misconduct, and a potential finding that Jackson maliciously interfered with the Plaintiff's employment mutually exclusive?

---

(stating that "collateral estoppel does not apply to state administrative decisions where Congress has provided for a detailed administrative remedy")).

Turning to the elements of malicious interference with contract, "Mississippi law allows for recovery against those who intentionally and improperly interfere with the performance of a contract between another and a third party, causing the third party not to perform the contract and thereby causing injury." *Morrison v. Mississippi Enter. For Tech., Inc.*, 798 So. 2d 567, 574 (Miss. Ct. App. 2001) (citing *Shaw v. Burchfield,* 481 So. 2d 247, 254–55 (Miss. 1985)).[4] Tortious interference with at-will employment can be the basis of a claim. *Id*. (citing *Levens v. Campbell*, 733 So. 2d 753, 760 (Miss. 1999)).

To substantiate a malicious interference with contract/employment claim the Plaintiff must show:

> (1) that the Defendant's acts were intentional and willful; (2) that they were calculated to cause damages to the Plaintiff's business; (3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the Defendant; and (4) that an actual loss occurred.

*Guest-White v. Checker Leasing, Inc.*, No. 1:14CV172-SA-DAS, 2016 WL 595407, at *5 (N.D. Miss. Feb. 11, 2016) (citing *Levens*, 733 So. 2d at 760). The Plaintiff must also prove that but for the interference, the contract would have been performed. *Id*.

The confrontation between Defendant Jackson and the Plaintiff in the warehouse occurred before she spoke obscenities at him in her work area. Thus, the alleged interference occurred before the dischargeable misconduct.

Although the Defendants have presented numerous arguments regarding the weight of the administrative findings, and Court finds those arguments well taken, they have not presented any arguments about why these specific administrative findings preclude a claim for malicious

---

[4] Defendant Jackson was not a "stranger" to the contract, at-will employment between Vital Marketing and the Plaintiff, and under Mississippi law "one occupying a position of responsibility on behalf of another is privileged, within the scope of that responsibility and absent bad faith, to interfere with his principal's contractual relationship with a third person." *Morrison*, 798 So. 2d at 574 (citing *Shaw,* 481 So. 2d at 255). For purposes of the instant motion, the Plaintiff has sufficiently alleged bad faith to overcome the privilege.

interference under the facts of this case. Because the alleged harassment and interference occurred prior to the dischargeable misconduct, the Court sees no reason why the two findings must be, as a matter of law, inconsistent. Based on the record at this time it is *possible* that the Plaintiff could sustain a claim for malicious interference and yet ultimately have been discharged for misconduct.

To be clear, the parties have not briefed the merits of the interference claim, and the Court does not reach any conclusion on the potential merits of that claim at this time. The Court's finding is limited to the specific circumstances of this particular case based on the facts in the record and the arguments presented by the parties at this time. For these reasons, the Defendants motion for summary judgment requesting dismissal of the Plaintiff's claim for malicious interference with employment is denied.

*Back Pay*

As to the issue of back pay, the Defendants request the Court limit any potential recovery by the Plaintiff for back pay arguing that she failed to mitigate her damages by looking for substantially similar employment and that she left the work force due to a "high-risk" pregnancy. Numerous questions of fact exist as to the events, timing, and reasons for the Plaintiff's employment situation after Vital terminated her. Specifically, it is unclear based on the record what positions the Plaintiff applied for and when, when the Plaintiff left the workforce due to her pregnancy, and whether, and under what terms, she may have left the workforce even if she was still employed by Vital. In addition, because there has been no motion for summary judgment on the Plaintiff's Title VII claims, the Court has not had the opportunity to address the potential merits and facts of those claims. For this reason, a ruling on mitigation of damages is premature. Should this case proceed to trial, the Court will hear testimony and argument on damages at the

7

appropriate time. The Defendants' motion for summary judgment is denied as to the issue of back pay.

For all of the reasons fully explained above, the Defendants' Motion for Partial Summary Judgment [37] is DENIED.

So ORDERED on this the 3rd day of February, 2017.

        /s/ Sharion Aycock
    UNITED STATES DISTRICT COURT JUDGE